## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                        )
EDITH SCHLAIN WINDSOR, in her           )
capacity as executor of the estate of   )
THEA CLARA SPYER,                       )
                                        )
      Plaintiff,                    )
                                        )
      v.                            )     Civil Action No. 10-CV-8435 (BSJ)(JCF)
                                        )
THE UNITED STATES OF AMERICA,           )
                                        )
      Defendant.                    )
_____)


### REPLY OF THE BIPARTISAN LEGAL ADVISORY GROUP
### OF THE U.S. HOUSE OF REPRESENTATIVES
### TO DEFENDANT'S RESPONSE TO THE MOTION TO INTERVENE

      As the Court is aware, the Attorney General announced on February 23, 2011, that the

Department of Justice (the "Department") would cease defending—including in this case—the

constitutionality of Section III of the Defense of Marriage Act ("DOMA"), Pub. L. No. 104-199,

110 Stat. 2419 (1996), 1 U.S.C. § 7, against attacks that DOMA violates the equal protection

component of the Fifth Amendment.  In so announcing, the Attorney General expressly

articulated his intent to "provid[e] Congress a *full and fair* opportunity to participate in the

litigation in [the] cases [at issue]."  Doc. 13-1, Letter from Eric H. Holder, Jr., Att'y Gen., to

Hon. John A. Boehner, Speaker, U.S. House of Representatives at 5-6 (Feb. 23, 2011) (emphasis

added).

      On March 9, 2011, the Bipartisan Legal Advisory Group of the U.S. House of

Representatives (the "House") determined to defend the statute and, taking the Attorney General

at his word, moved to intervene as a party defendant because that is the only way for the House "fully and fairly" to participate in this litigation.  *See* Doc. 13, Mem. of P. & A. in Supp. of Unopposed Mot. of . . . House . . . to Intervene for Limited Purpose (Apr. 18, 2011).

On May 5, 2011, the Department responded.  *See* Def.'s Resp. to Mot. to Intervene (May 5, 2011) ("Response").  Notwithstanding its continued professions of non-opposition—"the United States does not oppose [the House's] Motion to Intervene," *id*. at 1—the Department now seeks effectively to reduce the House to the status of *amicus curiae* by questioning the House's standing to intervene, *id*. at 2, by proposing to limit the House to "present[ing] arguments," *id*., and by asserting a right to act as gatekeeper for the House's efforts to defend a validly enacted statute that the Department itself refuses to defend, *id*. at 2-3.

The Court should reject the Department's attempt to control the manner in which the House defends DOMA, including its implied assertion of authority unilaterally to preclude judicial determination of the constitutionality of legislation.  Where, as here, the Department refuses to carry out its constitutional responsibility to defend a duly enacted federal statute, Congress is empowered to intervene, without restriction, to defend the statute in order to enable the judiciary, *and not the executive*, to make the ultimate determination of the statute's constitutionality:  "We have long held that Congress is the proper party to defend the validity of a statute when an agency of government, as a defendant charged with enforcing the statute, agrees with plaintiffs that the statute is inapplicable or unconstitutional."  *INS v. Chadha*, 462 U.S. 919, 940 (1983).

*       *       *

1.  The Department's Response begins with the misplaced premise that the House lacks standing to serve as a party in this litigation.  *See* Resp. at 2 ("Congress's interest in the

2

constitutional validity of a law does not confer standing to enter an action as a party any more than citizens with a generalized grievance would have standing to do so.").  As an initial matter, this argument is beside the point.  As long as the United States is a defendant in this action (and the United States will remain a defendant, regardless of the role that the Department chooses to play or not play in this litigation, until it is dismissed or the case concludes, neither of which has occurred), the House need not demonstrate any standing whatever.  *See, e.g.*, *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 190 (2d Cir. 1978) ("The question of standing in the federal courts is to be considered in the framework of Article III which restricts judicial power to cases and controversies.  The existence of a case or controversy having been established as between the [existing parties], there was no need to impose the standing requirement upon the proposed intervenor [defendant]." (quotation marks, citations, and brackets omitted)); *Hoblock v. Albany Cnty. Bd. of Elections*, 233 F.R.D. 95, 97 (N.D.N.Y. 2005) ("[T]here is no Article III standing requirement in the Second Circuit, with an intervenor only needing to meet the Rule 24(a) requirements and have an interest in the litigation, if there is already a case or controversy in existence between the original parties to [the] litigation who have standing.").[1]

As a result, neither of the cases cited by the Department is apposite.  *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 482-83 (1982), stands only for the unremarkable proposition that status as a U.S. citizen and/or taxpayer does not alone confer standing to challenge government action (or inaction).  And in

---

[1]  *See also, e.g.*,  *San Juan Cnty., Utah v. U.S.*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc) (Article III standing not required for defendant intervention where ongoing case or controversy); *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998) (same).

*Newdow v. U.S. Congress*, 313 F.3d 495 (9th Cir. 2002), the Ninth Circuit (not the Second Circuit) denied the Senate's request to intervene in an Establishment Clause case that challenged, among other things, a federal statute inserting the words "under God" into the Pledge of Allegiance, where (i) the Senate sought to intervene pursuant to a statute that specifically limited Senate intervention to cases "in which the powers and responsibilities of Congress under the Constitution . . . are placed in issue" and required that the Senate's Article III standing be shown to exist, 2 U.S.C. § 288e(a); and (ii) most importantly, the Department actively was defending the constitutionality of the statute in the litigation.  In so holding, the Ninth Circuit distinguished a number of cases in which, unlike in *Newdow* (but exactly like here), a congressional body successfully intervened to defend the constitutionality of a statute that the Department had refused to defend.  313 F.3d at 498.  Accordingly, neither case supports the Department's suggestion that the House lacks standing here, even if standing were required.

In any event, although the Court need not reach this issue, it is clear from *Chadha* that the House indeed does have standing.  In *Chadha*, a private party challenged the constitutionality of a federal statute that the Department declined to defend.  Following an appellate ruling on behalf of the plaintiff, the House and Senate moved to intervene for the purpose of filing a petition for certiorari.  *See* 462 U.S. at 930 n.5.  The appellate court granted that motion, and the Supreme Court granted the subsequent House and Senate petitions for certiorari, holding (over the Department's suggestion otherwise) that "Congress is both a proper party to defend the constitutionality of [the statute] and a proper petitioner under [the statute governing petitions for writs of certiorari]."  *Id.* at 939; *see also* Dep't Resp. to House & Senate Pets. for Cert., *U.S. House of Representatives v. INS*, at *4 (Aug. 28, 1981) (Nos. 80-2170 & 80-2171), 1981 U.S. S. Ct. Briefs LEXIS 1423.  In so holding, the Court made crystal clear that the House and Senate

4

had Article III standing:  "[A]n appeal must present a justiciable case or controversy under Art.

III.  Such a controversy clearly exists . . . *because of the presence of the two Houses of Congress*

*as adverse parties*."  462 U.S. at 931 n.6 (emphasis added).  Therefore, when the position of the

Department and the plaintiffs ceases to be adverse as to the constitutionality of a statute, as it has

here, the House has Article III standing.

In keeping with *Chadha's* holding, congressional entities—including specifically the

House through its Bipartisan Legal Advisory Group and other leadership groups—repeatedly

have intervened to defend the constitutionality of legislation that the Department has refused to

defend, including but not limited to:  *In re Koerner*, 800 F.2d 1358, 1360 (5th Cir. 1986) ("In

response [to the Justice Department's support for plaintiff's constitutional challenge to the

Bankruptcy and Federal Judgeship Act of 1984], the United States Senate and the House

Bipartisan Leadership Group intervened to defend the constitutionality of the 1984 Act."), and

*Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 879, 880 (3d Cir. 1986) (President

Reagan declared Competition in Contracting Act unconstitutional and "upon the advice of the

Attorney General ordered the executive department not to observe it"; the district court, 607 F.

Supp. 962 (D. N.J. 1985), "grant[ed] the motions of the Senate, the Speaker, and the Bipartisan

Leadership Group of the House to intervene as plaintiffs to support the constitutionality of

CICA"), *modified* 809 F.2d 979 (3d Cir. 1986).  *See also, e.g.*, *Adolph Coors Co. v. Brady*, 944

F.2d 1543, 1545 (10th Cir. 1991); *Barnes v. Carmen*, 582 F. Supp. 163, 164 (D.D.C. 1984),

*rev'd sub nom. Barnes v. Kline*, 759 F.2d 21, 22 (D.C. Cir. 1984), *vacated on mootness grounds*

*sub nom. Burke v. Barnes*, 479 U.S. 361, 362 (1987); *In re Moody*, 46 B.R. 231, 233 (Bankr.

M.D.N.C. 1985); *In re Tom Carter Enters., Inc.*, 44 B.R. 605, 606 (Bankr. C.D. Cal. 1984); *In re*

*Benny*, 44 B.R. 581, 583 (Bankr. N.D. Cal. 1984), *aff'd in part & dismissed in part*, 791 F.2d 712 (9th Cir. 1986).

2. The Department's suggestion that the House be limited to "present[ing] arguments," Resp. at 1-2, also must be rejected. Such a narrow role is not consistent with the status of an intervenor defendant which, the Supreme Court has made clear, is the proper capacity for the House once the Department defaulted on its constitutional responsibility to defend DOMA: "*Congress is the proper party to defend* the validity of a statute when an agency of government, as a defendant charged with enforcing the statute, agrees with plaintiffs that the statute is inapplicable or unconstitutional." *Chadha*, 462 U.S. at 940 (emphasis added). And once the House is permitted to intervene as a party defendant, *with full responsibility for defense of a statute*, it must have the same rights as any other party, including the right to take discovery, if necessary, and the right to appeal or petition for certiorari. *See id.*; *see also, e.g.*, *Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996) (affirming grant of intervention: "[T]he right to file a brief as amicus curiae is no substitute for the right to intervene as a party in the action under Rule 24(a)(2).").

The Department notes that it supported Supreme Court review of challenged statutes in *Chadha* (by filing an appeal) and *United States v. Lovett*, 328 U.S. 303, 306-07 (1946) (by petitioning for certiorari). But that is irrelevant because both of those actions predated the Supreme Court's opinion in *Chadha*. Furthermore, the procedural history of *Chadha* itself undercuts the Department's position. In that case, as noted above, the House and Senate moved to intervene in the appellate proceeding for the purpose of petitioning for certiorari. *See* 462 U.S. at 930 n.5. The appellate court granted that motion, and—not mentioned by the Department—the Supreme Court then *granted* the subsequent House and Senate petitions for

certiorari, specifically disregarding the Department's suggestion that its appeal rendered Congress's petition for certiorari superfluous:  "Congress is . . . a proper petitioner under [the statute governing petitions for writs of certiorari]."  *Id.* at 939; *see also* Dep't Resp. to House & Senate Pets. for Cert., *U.S. House of Representatives v. INS*, at *4 (Aug. 28, 1981) (Nos. 80-2170 & 80-2171), 1981 U.S. S. Ct. Briefs LEXIS 1423.  As a result, the Department's appeal was irrelevant, which is another of way of saying that the Supreme Court flatly has rejected the Department's suggestion that the House must be relegated merely to "present[ing] arguments." Resp. at 1-2.  As to *Lovett*, the Supreme Court cited that case in *Chadha* in support of its statement that "[w]e have long held that Congress is the proper party to defend the validity of a statute when an agency of government, as a defendant charged with enforcing the statute, agrees with plaintiffs that the statute is inapplicable or unconstitutional."  *Chadha*, 462 U.S. at 940 (citing *Lovett* and *Cheng Fan Kwok v. INS*, 392 U.S. 206, 210 n.9 (1968)).

3.  It follows, therefore, that the House does not need the Department to take "procedural steps . . . to enable [the House] to present arguments" in defense of DOMA, Resp. at 2; does not need the Department to file "motions . . . to ensure that this Court can consider arguments on both sides of the constitutional issue and that the Court has jurisdiction to enter judgment," *id*.; and does not need the Department's assistance to "invoke the jurisdiction of the Supreme Court," *id*. at 2-3.  In short, the House does not need the Department's blessing or approval to defend DOMA in such manner as the House deems fit.  *See Chadha*, 462 U.S. at 928, 930 n.5, 931 n.6, 939-40.  And it further follows that the Court should decline to sign the proposed Order submitted by the Department—an Order that would limit the House's role to activities "consistent with the Department of Justice's role in this case as counsel for the United States"—

7

inasmuch as there is no basis in law for grafting this opaque and undefined proviso onto an Order granting the House's motion.

The disturbing legal implication of the Department's position here is that *it* has the power effectively to preclude judicial determination of a statute's constitutionality by (i) first refusing to defend a statute's constitutionality (an authority as to which it apparently feels there are few constraints), and (ii) then withholding or withdrawing its "commitment to provide Congress a full and fair opportunity to participate in the litigation," Resp. at 2.  Denying the House the ability to intervene, as a full party, to defend the constitutionality of an Act of Congress that the Department has chosen not to defend would be tantamount, or nearly so, to providing the executive branch an extra-constitutional post-enactment veto over federal statutes to which it objects.

The practical implications of the Department's position are equally disturbing.  The Department has made clear in this case that it will "continue to represent the interests of the United States throughout th[is] litigation."  Doc. 10-1, Letter from Tony West, Assistant Att'y Gen., to Hon. Barbara S. Jones (Feb. 24, 2011), attached to Doc. 10, Notice to Ct. by Def. U.S. of Am. (Feb. 24, 2011).  So the Department has a client, and that client is not the House.  What happens when the House's interest in conducting the litigation in the manner it deems appropriate diverges from what the Department perceives to be the interests of the executive branch?  What happens, for example, when the House wishes to accelerate or decelerate the timing of a notice of appeal or a petition for certiorari and the Department, in the interest of its client, wishes to do the opposite?  What happens if the Department decides to file pleadings challenging the constitutionality of the statute at the same time that the House is trying to defend the constitutionality of that statute?  If the Department cannot even support the House's effort to

intervene without, at the same time, trying to hamstring the House, what are the chances that the Department will get out of the way when it comes time for the House to make substantive litigation decisions?

The answer is that the Court should decline the Department's invitation to create conditions that would strain relations between the legislative and executive branches of the government, and interfere with the orderly consideration by the judiciary of DOMA's constitutionality, by granting the House's motion to intervene as a full party defendant.[2]

## CONCLUSION

For all the reasons stated above and in its motion to intervene, the House respectfully requests that the Court grant its motion to intervene as a party defendant and enter its proposed Order (Doc. 12-1).[3]

---

[2] Notably, this Court on May 11, 2011, issued a Revised Scheduling Order, which the Department did not oppose, that is inconsistent with the view that the House is a mere *amicus curiae* in this case. *See* Doc. 22, Revised Scheduling Order. For example, that order requires the House to make initial disclosures under Federal Rule of Civil Procedure 26, which *amici* are not required to do, and likewise allows the House to proffer expert witnesses, move to dismiss, and oppose plaintiff's motion for summary judgment. The Revised Scheduling Order cannot be reconciled with the *amicus curiae* status that the Department envisions for the House.

[3] Initially, the House moved to intervene only pursuant to Federal Rule of Civil Procedure 24(a)(1) and/or (b)(1)(A) because it understood that the motion was unopposed. In light of the Department's questioning now of the House's right to intervene under those provisions, the House is constrained to point out that intervention also is appropriate here under Rule 24(a)(2). Under the law of this Circuit: "Rule 24(a), intervention of right, requires that the proposed intervenor '(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (quoting *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197 (2d Cir. 2000). The House plainly satisfies each of those requirements here.

Respectfully submitted,

/s/ Paul D. Clement
PAUL D. CLEMENT
H. CHRISTOPHER BARTOLOMUCCI
CONOR B. DUGAN

BANCROFT PLLC[4]
1919 M Street, N.W.
Suite 470
Washington, D.C.  20036
(202) 234-0090 (telephone)
(202) 234-2806 (facsimile)

Counsel for the Bipartisan Legal Advisory Group of
the U.S. House of Representatives

OF COUNSEL:

KERRY W. KIRCHER, General Counsel
JOHN D. FILAMOR, Senior Assistant Counsel
CHRISTINE M. DAVENPORT, Senior Assistant Counsel
KATHERINE E. McCARRON, Assistant Counsel
WILLIAM PITTARD, Assistant Counsel
KIRSTEN W. KONAR, Assistant Counsel

OFFICE OF GENERAL COUNSEL
U.S. House of Representatives
219 Cannon House Office Building
Washington, D.C.  20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)

May 12, 2011

---

[4]  Bancroft PLLC has been "specially retained by the Office of General Counsel" of the House to litigate the constitutionality of Section III of DOMA on behalf of the House.  Its attorneys are, therefore, "entitled, for the purpose of performing [that] function[], to enter an appearance in any proceeding before any court of the United States . . . without compliance with any requirement for admission to practice before such court . . . ."  2 U.S.C. § 130f(a).

**CERTIFICATE OF SERVICE**

I certify that on May 12, 2011, I served one copy of the foregoing Reply of the Bipartisan

Legal Advisory Group of the U.S. House of Representatives to Defendant's Response to the

Motion to Intervene by CM/ECF and by electronic mail (.pdf format) on the following:

Roberta A. Kaplan, Esquire
Andrew J. Ehrlich, Esquire
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York City, N.Y.  10019-6064
rkaplan@paulweiss.com
aehrlich@paulweiss.com

Alexis Karteron, Esquire
Arthur Eisenberg, Esquire
NEW YORK CIVIL LIBERTIES UNION FOUNDATION
James D. Esseks, Esquire
Melissa Goodman, Esquire
Rose A. Saxe, Esquire
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York City, N.Y.  10004
akarteron@nyclu.org
arteisenberg@nyclu.org
jesseks@aclu.org
mgoodman@nyclu.org
rsaxe@aclu.org

Jean Lin, Esquire
UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION
20 Massachusetts Avenue, N.W., Seventh Floor
Washington, D.C.  20530
jean.lin@usdoj.gov

*/s/ Kerry W. Kircher*
Kerry W. Kircher